IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 17-50-RGA |
| | ) | |
| ZAHID ASLAM, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

Defendant has filed a motion which seeks compassionate release.  (D.I. 73).  I have

received further submissions.  (D.I. 77, 78, 79).  I had oral argument on the motion on July 28,

2020.

The statute applicable to this motion, 18 U.S.C. § 3582, provides as follows, in relevant

part:

> The court may not modify a term of imprisonment once it has been imposed except
> that—
> (1) in any case—
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon
>> motion of the defendant after the defendant has fully exhausted all administrative
>> rights to appeal a failure of the Bureau of Prisons to bring a motion on the
>> defendant's behalf or the lapse of 30 days from the receipt of such a request by
>> the warden of the defendant's facility, whichever is earlier, may reduce the term
>> of imprisonment (and may impose a term of probation or supervised release with
>> or without conditions that does not exceed the unserved portion of the original
>> term of imprisonment), after considering the factors set forth in section 3553(a) to
>> the extent that they are applicable, if it finds that—
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in
>>> prison, pursuant to a sentence imposed under section 3559(c), for the
>>> offense or offenses for which the defendant is currently imprisoned, and a

determination has been made by the Director of the Bureau of Prisons that
the defendant is not a danger to the safety of any other person or the
community, as provided under section 3142(g);
and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission; and
(B) the court may modify an imposed term of imprisonment to the extent
otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of
Criminal Procedure; and
(2) in the case of a defendant who has been sentenced to a term of imprisonment based on
a sentencing range that has subsequently been lowered by the Sentencing Commission
pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau
of Prisons, or on its own motion, the court may reduce the term of imprisonment, after
considering the factors set forth in section 3553(a) to the extent that they are applicable, if
such a reduction is consistent with applicable policy statements issued by the Sentencing
Commission.

18 U.S.C. §3582(c).

There is a relevant Sentencing Guideline, section 1B1.13, which provides a policy

statement, as follows:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A),
the court may reduce a term of imprisonment (and may impose a term of supervised
release with or without conditions that does not exceed the unserved portion of the
original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §
3553(a), to the extent that they are applicable, the court determines that—
(1)     (A)  extraordinary and compelling reasons warrant the reduction; or
        (B)  the defendant (i) is at least 70 years old; and (ii) has served at least 30 years
        in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the
        offense or offenses for which the defendant is imprisoned;
(2)     the defendant is not a danger to the safety of any other person or to the community,
as provided in 18 U.S.C. § 3142(g); and
(3)     the reduction is consistent with this policy statement.

U.S.S.G. §1B1.13.

Further, there is an application note, which provides:

1.      Extraordinary and Compelling Reasons.—Provided the defendant meets the
requirements of subdivision (2), extraordinary and compelling reasons exist under any of
the circumstances set forth below:
(A)     Medical Condition of the Defendant.—
        (i)     The defendant is suffering from a terminal illness (i.e., a serious and
        advanced illness with an end of life trajectory). A specific prognosis of life
        expectancy (i.e., a probability of death within a specific time period) is not

2

required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
(ii)      The defendant is—
    (I)      suffering from a serious physical or medical condition,
    (II)      suffering from a serious functional or cognitive impairment, or
    (III)      experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(B)      Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C)      Family Circumstances.
    (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii)      The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
(D)      Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G § 1B1.13, Applic. Note 1.

By way of background, I sentenced Defendant on May 31, 2019, to thirty months imprisonment for "making false statements to a financial institution." (D.I. 69). At the time of sentencing, the presentence report stated, at paragraph 105: "The defendant advised that he is healthy and does not have a history of health problems. He does not report taking any prescription medications or suffering from any allergies." (D.I. 66). Defendant's projected release date is a little more than ten months from now, on June 8, 2021. (D.I. 73 at 1-2; D.I. 77 at 2). According to counsel at oral argument, he would be eligible for home detention three months before that, which is about seven months from now. Given that there is no detainer on Mr. Aslam, he should be eligible for halfway house placement before then. He is at Moshannon in Pennsylvania, which has no reported COVID-19 cases to date.

Mr. Aslam says he has tuberculosis, hepatitis, and borderline hypertension.  (D.I. 73 at 1).
The tuberculosis is "latent tuberculosis."  (*Id*. at 2).  Mr. Aslam says the latent tuberculosis
means he has "pulmonary scarring," which is a chronic lung disease, and makes him more
susceptible to COVID-19.  (*Id*.).  Aslam is now taking "isoniazid to aggressively treat his
tuberculosis."  (*Id.* at 3).  He started this treatment on May 18, 2020.  (*Id*. at 4 n.3).  According to
the World Health Organization (WHO), "About one-quarter of the world's population has latent
TB, which means people have been infected by TB bacteria but are not (yet) ill with the disease
and cannot transmit the disease."  (https://www.who.int/news-room/fact-
sheets/detail/tuberculosis). I believe the incidence of latent TB in the United States is lower.

Mr. Aslam has "chronic hepatitis C" and "exposure to hepatitis A and B."  (D.I. 73 at 3).
According to the WHO, "Hepatitis is an inflammation of the liver.  The condition can be self-
limiting or can progress to fibrosis (scarring), cirrhosis or liver cancer."
(https://www.who.int/news-room/q-a.detail/what-is-hepatitis).  "Hepatitis C virus causes both
acute and chronic infection.  New HCV infections are usually asymptomatic. [About 70% of
those infected] develop chronic HCV infection. Of those with chronic HCV infection, the risk of
cirrhosis ranges between 15% and 30% within 20 years."  (https://www.who.int/news-room/fact-
sheets/detail/hepatitis-c).

Mr. Aslam has borderline hypertension.   He does not require medication for this "yet."
(D.I. 73 at 4).

According to Defendant's expert in infectious diseases, Dr. Berg, who reviewed 159
pages of Defendant's medical records from Moshannon, Defendant is "at an increased risk for
severe illness or death if he were to contract Covid-19 disease because of his history of

tuberculosis, his history of viral hepatitis, his age, gender, and current medications."  (D.I. 73-4

Exhibit B, at 1).[1]

Mr. Aslam submitted an administrative request for compassionate release on May 14, or

possibly May 26, 2020. (D.I. 73 at 10-11).  Whatever the exact date of submission, thirty days

has run.  The "Facility Administrator" denied the request in part because Mr. Aslam is a

deportable alien.  (*Id*. at 11 n.6; *see* Exhibit R at 8 "Public Safety Factor of Deportable Alien"

makes him "not eligible.").  There is, however, no ICE detainer.  (*Id*. at 11 n.6, Exhibit Q).

The Government responds that Defendant's "conditions are minor."  (D.I. 77 at 1).

The Government says I should consider whether the inmate faces greater risk on the outside than

on the inside.  (*Id*. at 11).  The Government's position follows from its characterization of his

conditions.  That is, Defendant's conditions, considered in the light of the COVID-19 epidemic,

do not meet the "extraordinary and compelling" requirement of the statute.  The Government

states that its position is consistent with the decisions that district courts have been making on

motions presenting similar circumstances.

In reply, Defendant relies upon a further letter from his expert to support that his liver has

scarring (a/k/a cirrhosis).  (DI 78-1, Exh.1).  CDC guidance from June 25, 2020, says having

scarring or cirrhosis "may increase" the risk for severe illness from COVID-19.  (D.I. 78 at 6).

---

[1] I do not think that the borderline hypertension is a significant factor in determining this motion.
I say that after consideration of both Dr. Berg's opinion as stated in his opening report (which
only mentions "elevated blood pressure" along with "male gender" and "older age" as
"significant risk factors for a worse prognosis with COVID-19 disease") and the fact that the
hypertension is sufficiently borderline that it requires no medication.

The medical evidence in the record consists of the two reports of Defendant's expert (D.I. 73-4; D.I. 78-1) and Bureau of Prisons medical records (D.I. 79, Exh. C).  Defendant's expert reviewed the Bureau of Prisons medical records, but no other medical records.[2]  (D.I. 73-4).

In terms of increased risk of severe COVID-19 infection, Dr. Berg cites Defendant's "history of tuberculosis [and] viral hepatitis."  (*Id*.).  As to tuberculosis, Dr. Berg states that Defendant "has a positive protein derivative (PPD) test, which means that he has been exposed to tuberculosis and now has latent tuberculosis.  The pulmonary scarring from latent tuberculosis is a form of chronic lung disease."  (*Id*.).  Dr. Berg states that latent tuberculosis can be treated either by chest x-rays every six months (which I take it is not so much treatment as it is monitoring) or by isoniazid treatment.  Defendant recently switched from chest x-rays to isoniazid.  (*Id*.).  Isoniazid treatment carries its own risks.  And, some COVID-19 treatments would be "particularly dangerous" because they would interact badly with the latent tuberculosis. (*Id*.).  In regard to viral hepatitis, Dr. Berg says there is "serologic evidence of exposure to hepatitis A, hepatitis B, and hepatitis C."  (*Id*.).  The isoniazid causes strain on the liver.  "The end result of all of these past and present liver toxins would be potential scarring or cirrhosis, causing chronic liver disease."  (*Id.*).  In response to various Government arguments, Dr. Berg supplemented his opinions with the following:  "[E]ven though [Defendant] appears to be 'cured' of his active hepatitis C infection, the hepatitis virus has almost certainly caused permanent damage – scarring, which is referred to as 'cirrhosis' – to his liver."  (D.I. 78-1). And, "scarring caused by latent tuberculosis would normally cause some loss of lung function." (*Id*.).

---

[2] From what I can tell from the prison medical records, it appears that Defendant did not know of his tuberculosis or hepatitis exposure before entering prison.  The conditions were discovered through the lab work done upon his admission to prison.

I have reviewed the prison medical records.  They seem to start on July 1, 2019, and, generally, seem to me to be routine.  At medical intake on July 11, 2019, he denied ever having tuberculosis.  (D.I. 79, Exh. C, at 135).  His response to whether he had ever had hepatitis is not visible.  (*Id*.). But within a few days, lab work had revealed the positive PPD test and the hepatitis.  (*Id*. at 132).   At most of the visits with medical staff, Defendant describes himself as, "I'm good" (*Id*. at 49 (7/23/19), 35 (10/10/19), 34 (10/22/19), 25 (1/2/20), 22 (1/17/20), 19 (2/5/20), 13 (4/27/20)), or, "I'm well."  (*Id*. at 47 (8/5/19), 46 (8/21/19)), except for when he injured himself exercising (*Id*. at 29 (12/3/19), 26 (12/30/19)).

I rely primarily upon the CDC and the WHO to try to assess what has been presented.

In its TB section, the CDC states; "TB patients who are at least 65 years old; have respiratory compromise from their TB; or other medical conditions, including HIV and other immunocompromising conditions, are at greater risk for severe COVID-19 infection." (www.cdc.gov/tb/education/public-health-emergencies.htm); *see* D.I. 78 at 6.  Defendant emphasizes the "other medical conditions." (D.I. 78 at 6-7).  I do not think, however, the reference refers to *all* other medical conditions, but to other medical conditions similar to "HIV and other immunocompromising conditions."

In its Liver disease section, the CDC states, "Having chronic liver disease, especially cirrhosis (scarring of the liver), may increase your risk for severe illness from COVID-19."  In his first report, Dr. Berg described "potential scarring or cirrhosis."  In his second report, Dr. Berg described "almost certain[] permanent damage – scarring [or cirrhosis] – to his liver."  The two statements do not seem entirely consistent; the first statement seems much more consistent with the WHO's statement that only a minority of chronic hepatitis C patients develop cirrhosis.

But, in any event, the CDC cannot say that even the second description puts Defendant at greater risk for severe COVID-19 infection.

I am satisfied after full consideration and study of Dr. Berg's report and the CDC website that Defendant is at somewhat greater risk for severe COVID-19 infection than a fully-healthy person of his age, and that there is a reasonable chance that, if he were infected, there would be some negative synergy from the combination of latent tuberculosis, hepatitis, and isoniazid treatment. Even so, I have struggled with whether the combination of these conditions together with the COVID-19 pandemic reaches the "extraordinary and compelling reasons" standard of the statute. I also consider the Application Note to the Sentencing Guideline, which applies when the motion is being made by the Bureau of Prisons rather than the inmate.[3] Defendant's present conditions combined with the possibility of a COVID-19 infection while in a dormitory-style prison are hard to compare with the seriousness of the various scenarios in the Application Note.

I appreciate that I have discretion on this motion. *See United States v. Pawlowski*, ___ F.3d ___, 2020 WL 3483740 (3d Cir. June 26, 2020). In general, in discretionary decisions, decisions of other courts are not that helpful. But I do note *United States v. Rodriguez*, 2020 WL 3447777, at *4 (E.D. Pa. June 24, 2020), which cites three cases and concludes, "we have found only a few cases in which inmates with latent TB have been granted compassionate relief during the COVID-19 pandemic and in all of those cases, there were other critical circumstances that contributed to the court's decision to grant release, including the presence of another, more critical underlying condition that increased the inmate's COVID-19 risk, advanced age, and/or an

---

[3] I therefore take it as guidance, not as a binding rule. *See United States v. Clausen*, 2020 WL 4260795, at *4-5 (E.D. Pa. July 24, 2020).

upcoming release date." That is not the uniform view, however. *See United States v. Watkins*, 2020 WL 4016097, at *2 (E.D. Mich. July 16, 2020) (releasing 34-year old whose "only pre-existing condition appears to be his latent tuberculosis").

In essence, before I can grant the motion of a prisoner for compassionate release, the prisoner has (1) to exhaust administrative remedies, *see United States v. Raia*, 954 F.3d 594 (3d Cir. 2020),  (2) to show extraordinary and compelling circumstances, (3) to show an absence of dangerousness, and (4) to show that the section 3553(a) factors support a reduced sentence. It appears that I should consider these sequentially. *See, e.g., United States v. Washington*, 2020 WL 1969301 (W.D.N.Y. April 24, 2020).

Here, Defendant requested compassionate release from the Facilities Administrator (who is the equivalent of a warden), more than 30 days have elapsed, and the request has not been granted. The Government agrees that Defendant has met the exhaustion requirement, and that I can consider his request. (D.I. 77 at 10 n.7).

Though not without some doubt, I find that Defendant has shown "extraordinary and compelling circumstances." In addition to what I have already discussed, I take into account the reality that social distancing is the order of the day and that many of us "on the outside" go to great lengths to avoid anything like the setting in which Defendant lives. I was reminded of this today when I saw that the Chief Justice of Delaware had postponed the resumption of jury trials for another thirty days. The District of Delaware had already postponed jury trials through the end of August. And, the day of the argument in this case was approximately when the positive COVID-19 cluster in the Miami Marlins came to light. The best plans of the Bureau of Prisons reduce the risk of outbreaks, but they do not prevent them.

I do not need to consider the absence of dangerousness at  great length.  The Government properly conceded that there is no risk of dangerousness.  (D.I. 77 at 10 n.7).  I agree.

In terms of the section 3553(a) factors, what I said at sentencing still stands.  I do not think, though, that reducing the remainder of the period of incarceration in a prison, which is likely a period of less than six months, will undercut the deterrent effect of the sentence I imposed, and I do not think, under the circumstances, will inappropriately minimize the seriousness of the offense.  I cannot say the present circumstances are unprecedented in light of the Spanish flu epidemic of a century ago, but they are sufficiently rare so that they are unlikely to be repeated any time soon.  Nobody is going to take the reduced prison time here as the norm.

The Government has addressed the practical considerations of release to home detention. (D.I. 77 at 16-17).  I will adopt those considerations in a separate order that I will enter.

Thus, I **GRANT** Defendant's motion (D.I. 73), which I will implement by separate order. IT IS SO ORDERED this 5th day of August 2020.

  /s/ Richard G. Andrews        
United States District Judge